JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA HEARD, on behalf of herself and all other persons similarly situated,<br>        Plaintiff,<br><br>                    v.<br><br>TORRANCE MEMORIAL MEDICAL CENTER et al.,<br>        Defendants. | CV 22-09466 DSF (JPRx)<br><br>Order GRANTING Motion to Remand (Dkt. 16) |

Plaintiff Angela Heard moves to remand this action to the Superior Court of California, County of Los Angeles.  Dkt. 16 (Mot.). Defendant Torrance Memorial Medical Center (Torrance) opposes. Dkt. 20 (Opp'n).  The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.

## I. BACKGROUND

On November 15, 2022, Plaintiff Angela Heard filed a class action lawsuit in Los Angeles County Superior Court on behalf of herself and all California residents who had their personally identifiable information and protected health information improperly disclosed to Facebook as a result of accessing Torrance's website.  See Dkt. 1-1, Ex. A (Compl.).  Heard alleges that Torrance embeds Facebook's Tracking Pixel into pages of its website, www.torrancememorial.org, allowing it to monitor how patients and visitors interact with the website.  Id. ¶ 20.  Heard alleges that Pixel "tracks users as they navigate through the Website and logs which pages are visited, which buttons are clicked,

specific information users enter into forms . . . , search queries (e.g., "do I have covid"), and other information including a patient's IP address." Id. ¶ 21.  This information is collected not just by Torrance but also by Facebook, so if a patient is a Facebook user, Facebook links the information it receives from the website, which includes identifying information, to the patient's Facebook profile.  Id. ¶ 22.

Heard asserts four causes of action: (1) violation of California's Invasion of Privacy Act, Cal. Penal Code §§ 630, et seq.; (2) violation of California's Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56, et seq.; (3) invasion of privacy in violation of the California Constitution; and (4) common law invasion of privacy.  Id. ¶¶ 74-119. On December 30, 2022, Torrance removed the case to federal district court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute.

## II. LEGAL STANDARD

A defendant may remove to federal court a state court action brought against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ."  28 U.S.C. § 1442(a)(1); Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 145 (2007).  Federal officer removal is available under 28 U.S.C. § 1442(a) if "(a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" Fidelitad, Inc. v. Insitu, Inc., 904 F.3d 1095, 1099 (9th Cir. 2018).

## III. DISCUSSION

Torrance asserts that "[o]ver the past two decades, the federal government has engaged in an extensive effort to build a nationwide health information technology infrastructure," and this case challenges the legitimacy of actions Torrance "has taken in connection with pursuing that directive."  Dkt. 1 at 1.  Torrance argues that it qualifies

as a "person" under the statute and effectively acted under a federal officer.  Id. at 6-8.

Torrance explains that the Office of the National Health Coordinator for Health Information Technology (ONC) published guidance for private providers to follow, including a five-year strategic plan that dictated that federal agencies were to collaborate with private stakeholders to build a culture of electronic health information access and use.  Id. at 5.  One aspect of the strategy was the Centers for Medicare & Medicaid Services' (CMS) Meaningful Use Program (MUP), aimed at increasing patients' meaningful use and engagement with electronic health records through the creation of patient portals.  Id. According to Torrance, under the program, "providers must meet certain criteria to receive full Medicare reimbursement, one of which is having an interoperable patient portal."  Id.  Torrance asserts that it acted under a federal officer because the federal government incentivizes, regulates, monitors, and supervises Torrance's actions as part of the MUP "in order to meet the government's national priority of interoperable health information technology," and Torrance is helping the government produce the "nationwide, interoperable information technology infrastructure for health information."  Id. at 7.  Torrance contends that in the absence of its actions, the government "would be left alone to complete its mission," that the government has specified how to best enhance patient engagement, including through a patient portal, and that the government has created an office dedicated to this issue and has closely monitored the work of private entities like Torrance.  Id. at 8.

Heard argues that Torrance is not effectively acting under a federal officer, Mot. at 6, and is not acting on behalf of a federal officer in a way that is similar to an agency relationship.  Id. at 8.  She notes that the Ninth Circuit has found that an agency relationship did not exist when a private oil company reached an agreement with the government that allowed the parties to "coordinate their use of [an] oil reserve in a way that would benefit both parties."  Id. at 8-9 (quoting Cnty. of San Mateo v. Chevron Corp., 32 F.4th 733, 759 (9th Cir. 2022)).  She argues that similarly, Torrance's "voluntary participation

in the MUP program does not establish that Defendant was acting as an agent of the government." Id. at 9.  Heard further argues that Torrance did not act in the government's place or on the government's behalf in establishing its patient portal, Torrance did not present facts suggesting it was ordered or demanded by federal authority to establish the portal, the website's use of Pixel is not a basic governmental task that the government would have otherwise performed, and no federal duty exists to develop patient portals nationwide. Id. at 9-11.

Torrance asserts in opposition that it acted in response to a federal directive – Torrance "gave its patients the opportunity to create and maintain their own personal electronic health records" through a patient portal.  Opp'n at 8.  It asserts that it submits reports every year to CMS on its involvement in the MUP. Id.  And Torrance received incentive payments from the federal government for its development and use of the patient portal. Id.  Torrance asserts that it has been "successful in meeting federal Meaningful Use criteria at least in part because of increased patient awareness and increased patient use of the MyTorranceMemorial patient portal." Id.

The Court agrees with Heard.  The Supreme Court has "interpreted the term 'person acting under that officer' as extending to a 'private person' who has certain types of close relationships with the federal government." Cnty. of San Mateo, 32 F.4th at 756 (citing Watson, 551 U.S. at 152-53).  "The Supreme Court has identified a number of factors courts should consider in determining whether a private person is acting under a federal officer for purposes of § 1442(a)(1)." Id.  The Court considers the following: (1) "whether the person is acting on behalf of the officer in a manner akin to an agency relationship"; (2) "whether the person is subject to the officer's close direction, such as acting under the subjection, guidance, or control of the officer, or in a relationship which is an unusually close one involving detailed regulation, monitoring, or supervision"; (3) "whether the private person is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm"; and (4) "whether the private person's activity is so closely related to the government's

implementation of its federal duties that the private person faces a significant risk of state-court 'prejudice, just as a government employee would in similar circumstances, and may have difficulty in raising an immunity defense in state court." Id. at 756-57 (internal quotation marks and citations omitted).

However, "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." Watson, 551 U.S. at 153. Courts "may not interpret § 1442(a) so as to 'expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries.'" Cnty. of San Mateo, 32 F.4th at 757 (quoting Watson, 551 U.S. at 153). The directions Torrance points to are general regulations and public directives regarding the development of health information technology and an electronic health records infrastructure. Therefore, removal is not justified by federal officer jurisdiction.

## IV. CONCLUSION

The motion to remand is GRANTED. The case is REMANDED to the Superior Court of California, County of Los Angeles.

IT IS SO ORDERED.

Date: March 13, 2023

Dale S. Fischer
United States District Judge